L. H. HENSHAW, Appellant,

v.

TEXAS EMPLOYERS' INSURANCE ASSO-
CIATION, Appellee.

No. 6516.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 19, 1955.

Rehearing Denied Oct. 17, 1955.

Huff & Splawn, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Lubbock, for appellee.

PITTS, Chief Justice.

This is a workman's compensation case wherein appellant, Leon H. Henshaw, an employee of Great Western Drilling Company, employer, seeks recovery of compensation benefits from appellee, Texas Employers' Insurance Association, for injuries sustained by him on October 14, 1953, when the automobile of a fellow employee in which he and four other members of the drilling crew were riding home from work overturned on a public highway about 4:45 o'clock p.m., approximately 25 miles from the rig on which they were employed to work daily from 8:00 o'clock a.m. to 4:00 o'clock p.m. At the trial of the case the trial court instructed a verdict in favor of appellee after the evidence was heard and rendered judgment accordingly from which an appeal has been perfected. The controlling question to be here determined is whether or not the record supports the holding of the trial court to the effect that as a matter of law appellant was not engaged within the scope of his employment or was not performing some substantial mission for his employer at the time he received his injuries.

The record reveals that on the date of the accident in question the employer was drilling on a location known as Rig No. 4, about 26 miles from Brownfield, Texas. Appellant was a member of one of the five-men crews drilling the well and the driller under whom appellant worked was Troy. Boyles, who was a member of the crew himself and who also employed appellant to work for the employer. The accident in question occurred while the crew, riding in the automobile of crew member, Gerald Hopkins, with appellant riding in the back seat thereof, was riding home from work at a point about one mile from Brownfield, where the crew members all resided. The crew was not furnished transportation to and from work by employer but they took daily turns driving their respective automobiles hauling the crew as a result of an arrangement made among themselves. On the day in question it was Gerald Hopkins' turn to use his automobile in taking the crew to and from work, which he did. Appellant and other crew members were not paid any mileage or any expenses for transportation. They were paid by the hour and only for the hours they actually worked on the job. It is not here contended that Gerald Hopkins, who hauled the crew on the day in question, was acting within the scope of his employment at the time of the accident. The said driver was not directed by the employer in the route the crew should take in going home, in the manner in which he drove or the speed at which he drove. Such matters were left entirely with the driver. The employer did not make any requirements as to the arrangements of the crew in going to and from work. Such was left entirely up to driller Boyles and the other members of the crew, including appellant. The arrangements this crew made in taking turns to haul the crew or "swap rides" was not unusual among such crews working in the oil field. On the occasion in question appellant's day's work was over, he had changed clothes and was riding home in the back seat of the automobile of a fellow employee at the time he received his injuries as a result of the accident. On the occasion in question appellant had no control over the said automobile or any interest therein.

Appellant recognizes the general rule to the effect that an employee is not covered under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., for injuries received by him while going to and returning from his place of

employment (Brief, Page 10) but he contends he has established an exception to the general rule or has at-least raised an issue of fact concerning an exception. Appellant contends that he was required to place a water can in the Hopkins automobile on the day in question before the crew left the rig and that he was also required to remove the said can when the crew got to Brownfield so he could fill the can with ice water and take it back to the field the next day when it would have been his turn to drive the crew to and from work, for which reason he contends that he was engaged within the scope of his employment and the furtherance of his employer's affairs at the time of the accident in question, since his employer furnished the water can and the ice to cool the water for the crew members to drink while working. According to the record the employer made no requirements as to the water, the water can or the transportation thereof. These matters were arranged by the crew members, including the driller under whom the others worked, in the same manner that the transportation arrangements were made. The employer furnished the can and the ice but had nothing further to do with the matter.

In the case of Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192, 194, the court said in part:

"It appears to be the settled rule that even though the contract of employment contemplates that the employee, while engaged generally in the performance of his duties, may be subjected to the perils and hazards of the streets and highways, nevertheless in order that an injury resulting from the risks of the streets may be compensable, the employee, at the time of the injury, must be actually engaged in the performance of some particular duty of his employment, or must be upon some substantial mission of his employer in the course of his employment, which subjects him to such perils."

In the case of Insurors Indemnity & Ins. Co. v. Lankford, Tex.Civ.App., 150 S.W.2d 288, a judgment in the trial court for plaintiff upon a jury verdict was reversed and judgment was rendered for the insurance carrier. In that case a member of a drilling crew previous to riding with a fellow worker on the way home after working hours, had been asked by a superior to stop on his way home and deliver a message to a mechanic to come out to a well and repair a generator. While on the way home and before the message was delivered a collision occurred on a public highway that resulted in injuries to the said member of the drilling crew, who sued for compensation benefits, claiming that because of the request that he stop and deliver a message while on his way home, he was engaged in the course of his employment while he was on his way home. The appellate court refused to accept his views in the matter and held that the delivery of the message requested of him was incidental to the trip that he must make home anyway, for which reason he was not to be compensated.

In the case of Texas Employers' Ins. Ass'n v. Beach, Tex.Civ.App., 213 S.W.2d 60, 70, a judgment in the trial court for plaintiff upon a jury verdict was reversed and rendered for the insurance carrier. In that case a crew driver of his own automobile was killed in a motor vehicle accident while he was driving home from work hauling a water can for the use of the crew, the ownership of the can not having been shown. His survivors sued for compensation benefits. The facts in that case were similar in many respects to the facts in the case at bar. The court there said in part:

"We think it cannot be seriously contended that Beach was within the course of his employment merely because at the time of the accident he had in his car a water can used by his crew that day for the purpose of carrying drinking water to the well which some other member of the crew would carry back to the well the following day."

The controlling issue here presented was answered against appellant's contentions here made in a very recent similar factual case of Travelers Ins. Co. v. Forson, Tex. Civ.App., 268 S.W.2d 219. The facts in the

two cases are in all respects very similar, except that the facts in the Forson case probably support more strongly the contentions there made by the claimants than do the facts support appellant's claims here made. In the Forson case the crew of four men, including the driller, were on their way to work hauling a can of ice water under a crew membership arrangement similar in every respect to the one made in the case at bar, all riding that day in the driller's automobile, when Forson, a crew member, was accidentally killed as a result of a collision while en route to his place of employment and his surviving wife filed suit and obtained judgment for compensation benefits in the trial court but the appellate court reversed the trial court's judgment and rendered judgment for the insurance carrier. The appellate court there held that the fact that the deceased did participate in the filling of the water can and help place it in the automobile of a crew member before leaving for work, did not bring him within the scope of his employment when he was subsequently killed as a result of a collision while on his way to work. The court further held that if the transportation of the water can could be termed a substantial mission for the employer, such was performed by Leonard Henson, the driller, in whose automobile the crew was riding on the day and at the time of the collision which resulted in Forson's death. However, the court did not there hold that Leonard Henson was engaged in the course of his employment on the occasion in question. In our opinion, the court there logically and soundly discussed the controlling issue presented, which is similar in every respect to the one here presented, and the court there cites many authorities in support of its disposition made of the case.

In the case at bar it appears that the handling of the water can and the matter of filling it with ice water and returning it to the rig the next day would have been only incidental to the trips the crew would have made to and from work anyway and that over the same route. If the act of loading the water can by appellant on the day in question was an act within the scope of his employment, such act was completed at the rig before appellant left for home. The risk, if any, of loading the water can was over before appellant left the rig and certainly was over at the time he was subsequently injured on his way home. The can was being transported by another crew member, Gerald Hopkins, in his automobile at the time of appellant's injuries. Assuming that appellant would have been expected to unload the water can at Brownfield upon arrival, that time had not arrived at the time of his injuries. As was held in the Forson case under a similar factual situation, appellant was not loading, unloading or transporting the water can at the time of his injuries. Regardless of who had the responsibility of loading, unloading or transporting the water can, in our opinion appellant was doing nothing concerning his employment at the time he received his injuries. The risk or hazard to which appellant was exposed at the time of his injuries was that of a public highway over which he and the other crew members travelled at their own risk on their way to and from work and was one to which all members of the travelling public were alike subjected.

By reason of the record before us, together with the authorities cited and numerous others, we believe the trial court properly instructed the jury verdict for appellee. United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210; Bozant v. Federal Underwriters Exchange, Tex.Civ.App., 159 S.W.2d 973; Texas Indemnity Ins. Co. v. Clark, 125 Tex. 96, 81 S.W.2d 67; Jasper v. Texas Employers Ins. Ass'n, Tex.Civ.App., 206 S.W. 2d 646; American Motorists Ins. Co. v. Steel, Tex.Civ.App., 229 S.W.2d 386.

Appellant's authorities cited in support of his contentions here made have been carefully examined but we believe the facts presented in those cases are distinguishable from the facts in the case at bar, so much so that those authorities would have little, if any, bearing on the matters here presented and they certainly would not be con-

trolling upon the material issues here presented.

◼ Appellant complains about the trial court's definition of "scope of employment" and "injuries sustained in the course of employment" as given to the jury in its charge. We do not think such complaints are material since in our opinion the trial court properly withdrew the case from the consideration of the jury after preparing and submitting its charge. However, the only material difference we find in the definition given by the trial court and that requested by appellant is the use by the trial court of the word "substantial" before the word "mission" in the eighth line from the top of both definitions, making that part of the trial court's definition read "while engaged in some substantial mission incident to his employment" rather than omit the word "substantial" as requested by appellant. In our opinion the trial court's definition is not incorrect and the same is supported by the language approved by the Supreme Court previously herein quoted from the case of Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192. Appellant's complaints to the contrary are therefore overruled.

◼ In several points presented and briefed together, appellant complains because the trial court excluded or would not permit the admission of evidence concerning the use of automobiles belonging to other crew members on occasions other than the one when appellant was injured or concerning the use of appellant's automobile on some other occasion than the one on which he was injured, or concerning what other crew members or some other driller had done on some occasion other than the one at the time appellant was injured. On the day in question appellant did not take his automobile to the rig or well site. On the day in question the Hopkins automobile was being used only to transport the crew members and the water can in accordance with an understanding they all had among themselves. What some other employee or crew member may or may not have done

on some other day or on some different occasion other than the one when appellant received his injuries or what other automobiles of other employees, or even the automobile of appellant, may have been used for at some other time would all be secondary, if not wholly foreign, and not evidence of probative force concerning the material issues herein presented. The record reveals that the employer furnished an automobile to the "tool pusher," who used that automobile to get supplies, make trips and run errands for employer. In our opinion if the court had permitted the introduction of such evidence concerning secondary or foreign matters, there would probably have been no end to the hearing held. At any rate the trial court was justified in excluding or not permitting such evidence to be introduced because it was not material to the issues presented. Appellant's complaints to the contrary are overruled.

A careful examination of the record and the briefs reveals no reversible error. Appellant's points of error are all overruled and the judgment of the trial court is affirmed.