In the Matter of the Worker's
Compensation Claim of:

Brad CHAPMAN, Appellant
(Employee–Claimant),

v.

Anderson MEYERS, Appellee
(Employer–Respondent),

and

State of Wyoming, ex rel., Wyoming
Worker's Compensation Division,
Appellee (Objector–Defendant).

No. 94–261.

Supreme Court of Wyoming.

July 13, 1995.

Dick L. Kahl, Powell, for appellant.

No appearance, for appellee Anderson Meyers.

Richard J. Albanese, Sp. Asst. Atty. Gen., Powell, for appellee State of Wyoming ex rel. Worker's Compensation Div.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

In this appeal we decide whether injuries suffered by an employee in an automobile accident while returning home from work are compensable under the Wyoming Worker's Compensation Act. A hearing examiner determined the employee was not within the course and scope of his employment and denied benefits. The district court affirmed that decision.

We also affirm.

Appellant Brad Chapman raises these issues:

1. Did the required "nexus" exist between Employee/Claimant's employment and the accident in which the Employee/Claimant was injured?

2. Were the injuries suffered by Employee/Claimant in a motor vehicle accident caused by a "special risk" associated with his employment and thus compensable under the Worker's Compensation Act?

3. Did the District Judge in affirming the decision of the Hearing Examiner apply an incorrect definition of "injury"?

The Worker's Compensation Division states these issues:

1. Whether the Employee–Claimant's claim for benefits is foreclosed by the "going to and coming from" rule contained in prior case law of the Wyoming Supreme Court as well as Wyoming Statute Section 27–14–102(a)(xi)(D) (1993) and Wyoming Statute Section 27–311(n) (1977)?

2. Whether the so-called "special risk" exception applies in this case or whether that exception exists in Wyoming?

Chapman filed his claim for worker's compensation benefits on September 7, 1990, asserting he had suffered an injury on December 6, 1984 [1], while in the course and scope of his employment. After three years of proceedings, Chapman's case came on for hearing on its merits.[2] The record does not

---

1. Because of legal incompetence caused by the accident at issue, Chapman was considered to have timely filed his claim for benefits and no further question in that regard is raised in this appeal. We also note Chapman suffered his injuries in Colorado, but the Division determined that under WYO.STAT. § 27–14–204(a) (Supp. 1994), that fact was not an impediment to the claim.

2. The claim was filed on September 7, 1990. The case was originally docketed in Park County, then transferred to Natrona County, and then returned to Park County on April 9, 1991. The hearing examiner found the claim had not been timely filed and dismissed it by decision entered on December 19, 1991. Upon review, the district court reversed the hearing examiner, finding that the period of limitations was tolled by

provide a very clear picture of the facts which govern the result in this case. We perceive these to be the material facts which were relied upon by the hearing examiner in reaching his decision.

After completing his work shift on December 6, 1984, Chapman left his job on a drilling rig located near Hayden, Colorado, to return home to Wyoming to visit his family for several days. The rig crew lived in a motel in Craig, Colorado. Chapman was traveling in a vehicle owned by the wife of a co-employee. Chapman and three other employees car-pooled from Craig to the rig site. The employees were not reimbursed for travel to and from the rig, nor was a travel allowance paid as part of overall wages. The road leading to the rig was a two-lane, graveled, public road through a mountainous area. The road was snow-packed the day of the accident. Approximately one mile from the rig, the vehicle in which Chapman rode collided head-on with a tanker truck heading to the rig. In that collision Chapman suffered severe injuries when he was thrown from the back seat of the vehicle into the windshield.

Loren Martinez was one of the other passengers in the vehicle with Chapman and it was his task to bring a water jug filled with water to and from work with the group. He did not know who owned the water jug, though another co-employee believed it had been given to the employees by the employer.

■ This court has settled the standard for reviewing factual findings made in worker's compensation hearings. If, after examining the entire record, we discern substantial evidence to support the agency's findings,

we will not substitute our judgment for that of the agency. Under such circumstances we must uphold the agency's findings. *Britton v. Halliburton Services*, 895 P.2d 45, 46–47 (Wyo.1995); *Jaqua v. Wyoming Workers' Compensation Div.*, 873 P.2d 1219, 1220 (Wyo.1994).

■ We begin our analysis from the vantage point of a well-established rule. Ordinarily an employee is not within the course of employment when he is injured going to and from work. *Railworks, Inc. v. Naylor*, 723 P.2d 1237, 1241 (Wyo.1986); *Corean v. Wyoming Worker's Compensation Div.*, 723 P.2d 58, 61 (Wyo.1986); *Western Power Service & Constr. v. Van Matre*, 657 P.2d 815, 816 (Wyo.1983); *H.K. Ferguson Co. v. Willey*, 571 P.2d 248, 250–51 (Wyo.1977)[3].

■ Chapman contends his employer required, and contemplated, that its employees would not be able to live at the well site. Rather, of necessity, they would have to live in Craig and commute to the rig. Therefore, he argues, there is a sufficient nexus between the injury and his employment to require compensation. Chapman does not provide us with the benefit of much authority on this point. Under the factual circumstances outlined above, we are not persuaded Chapman was in the course and scope of his employment merely while driving to and from the work site under what can only be described as relatively typical (in Wyoming/Colorado) commuting circumstances. *See Cody v. North Dakota Workmen's Compensation Bureau*, 413 N.W.2d 316 (N.D.1987); *Clark v. Daniel Morine Constr. Co.*, 98 Idaho 114, 559 P.2d 293, 294 (1977); *Stark v. L.E. Myers Co.*, 58 Mich.App. 439, 228 N.W.2d 411

Chapman's incompetence. That order was entered on July 17, 1992. By order entered of record on August 13, 1993, the hearing examiner denied benefits. Chapman sought review of that determination on August 31, 1993. The district court affirmed by order entered on September 2, 1994. Further review was sought in this court and the matter was docketed here on October 31, 1994. Briefing in this court was completed by the parties on January 26, 1995. The case was assigned to the expedited docket on February 7, 1995, and was conferenced upon by this court on April 11, 1995.

3. This rule has now been codified at Wyo.Stat. § 27–14–102(a)(xi)(D) (Supp.1994): Injury does not include "Any injury sustained during travel to or from employment unless the employee is reimbursed for travel expenses or is transported by a vehicle of the employer." That language was added to the statute in 1986. 1986 Wyo.Sess. Laws (Special Session) Ch. 3. Because Chapman's accident occurred on December 6, 1984, we apply the law as it stood at the time of that occurrence. *Morris v. Smith*, 837 P.2d 679, 681 (Wyo.1992); *Shapiro v. Wyoming Worker's Compensation Div.*, 703 P.2d 1079, 1081–82 (Wyo. 1985).

(1975); *see* 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 16 (1995).

Chapman contends the presence of an employer's water can in the vehicle provides the necessary nexus to sustain his claim. The record is hazy as to exactly who owned the water can and whether it benefitted only Chapman's immediate group of employees, or both the employer and the employees. There are a number of cases on this subject of which we shall make note.

For instance, in *Hackfeld v. Pacific Employers Insurance Co.*, 393 S.W.2d 720 (Tex. Civ.App.1965), the court held the presence of a water can belonging to an employer did not change the fact the employees were going to and from work and were not in the course of employment. *Also see Henshaw v. Texas Employers' Insurance Ass'n*, 282 S.W.2d 928 (Tex.Civ.App.1955); *Travelers Insurance Co. v. Forson*, 268 S.W.2d 219 (Tex.Civ.App. 1954).

On the other hand, in *Ince v. Chester Westfall Drilling Co.*, 346 P.2d 346 (Okla. 1959), concerning an employee killed in an automobile accident while returning home from work, the employee was carrying an empty water can which the employer owned and the water was used by the drilling crew while on the job. The reviewing court reversed the determinations of the trial judge and the Industrial Commission that the injury had not arisen out of and in the course of employment. *Ince*, 346 P.2d at 348 (and cases cited therein); and *see Hughes v. Haco Drilling Co.*, 340 P.2d 472 (Okla.1959). Sustaining a jury award on the basis that the question was one for the jury and the evidence sufficient, the Fifth Circuit held that an employee killed while on his way to an ice house to obtain ice for the drilling crew's water can could have been within the course and scope of his employment. *Associated Indemnity Corp. v. Bush*, 201 F.2d 843 (5th Cir.1953); and *see Janak v. Texas Employers' Insurance Ass'n*, 381 S.W.2d 176 (Tex. 1964) (remanding for further consideration of a similar question).

■ In fleshing out his contentions in this regard, Chapman relies on our decision in *Corean v. Wyoming Worker's Compensation Div.*, 723 P.2d 58 (Wyo.1986). In that case we reaffirmed and clarified a rule which focuses on the nexus between the injury and the employment. We held that where an employee was carrying his employer's tools in his truck and had entered the zone where the employment took place, and the employer thereby benefitted, the injuries suffered by the employee in a one car accident were compensable. *Corean*, 723 P.2d at 61–63; and *see Richard v. Wyoming Worker's Compensation Div.*, 831 P.2d 244, 247 (Wyo.1992). In this instance, the hearing examiner found that the presence of the water can was not a significant benefit to the employer; indeed, any connection of the employer with the water can is equivocal. We hold there is substantial evidence to support the hearing examiner's findings to that effect.

■ Chapman contends his employment was attended by a "special risk," principally the winding mountain road which led to the rig. We will not recite the many cases contained in Chapman's brief. The law governing this area is well summarized in 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 15.13 (1995). This court has not previously had occasion to discuss the "special risk" rule. On this occasion, we neither embrace nor reject that rule. We do hold substantial evidence exists to support the hearing examiner's finding that the elements of a "special risk" were not present. The record reveals only that the road was a public, two-lane, gravel road in a mountainous area; Chapman was injured in a head-on collision on that road; and the accident occurred within a mile or so of the rig site. Those facts would not call into play the concept of a special risk, even if we were to give that rule full recognition. *See Soldier Creek Coal Co. v. Bailey*, 709 P.2d 1165, 1166–68 (Utah 1985).

■ Chapman also contends the hearing examiner erroneously applied an incorrect definition of "injury." We agree with Chapman that the definition in effect at the time of his accident would be the correct one to apply. That definition was:

(xii) "Injury" means any harmful change in the human organism other than normal aging, and includes damage to or loss of a

prosthetic appliance and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to business.   * * *.

WYO.STAT. § 27–12–102(a)(xii) (1983).   Subsection (D), which we recited above in footnote 3, was not a part of that definition in December 1984.   However, even if the hearing examiner did cite the wrong definition of "injury," we hold such error to be harmless. The result would be exactly the same under the circumstances of this case, whether the former or the latter definition was employed. Any error in reciting the incorrect definition is harmless and we must disregard it.   WYO. R.APP.P. 9.04 (1992).

The order of the district court affirming the hearing examiner's denial of benefits is affirmed.