Maria **RODRIGUEZ**, individually and as next friend of Antonio and **Evangelina Rodriguez**, minors, and **Daniel Rodriguez**, Appellants,

v.

**GREAT AMERICAN INDEMNITY COMPANY, Appellee.**

No. 16426.

United States Court of Appeals Fifth Circuit.

May 3, 1957.

Rehearing Denied June 13, 1957.

Charles J. Lieck, San Antonio, Tex., for appellants.

Carl Wright Johnson, Nat L. Hardy, San Antonio, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

Brought under the Texas Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., by the widow and child of the deceased employee, the suit was for death benefits provided by the Act for compensable injuries.

The claim was that, though the death had occurred not during, but after, working hours and not at his place of work, but as a result of a fire in his lodgings after he had retired for the night, decedent's death was, nevertheless, compensable under the statute as one occurring in the course of, and originating in, his employment within the meaning of the controlling provisions of the Act, because it occurred when in order to work at his job he was required to be away from his home.

The defense was that, since the hours and the rate of pay per hour were fixed by his contract of employment and the employee was free to and did select his own lodging place, the death of the deceased did not have to do with and originate in the work of his employer, and the defendant was not liable as insurer because the death was not a compensable injury under the Act.

Tried to the court without a jury on a stipulation and on undisputed deposition testimony, the district judge, finding the facts [1] in accordance therewith, concluded:

---

1. While set out in greater detail in the findings, these are in substance the facts found:

A carpenter by trade, Rodriguez lived in San Antonio, and on Jan. 7, 1955, when he came to his death in a hotel fire, was, and for about a week had been, engaged in performing work at Del Rio, Texas, for General Supply Co., defendant's insured. On account of the distance between the two cities, 160 miles, making it impractical for him to go and come to his work, his employment contemplated his staying in Del Rio during four and one-half days each week while the job was under way.

His job foreman, Gunnells, also lived in San Antonio, and he and Rodriguez came to and from Del Rio in Gunnell's car. Rodriguez did not furnish his own transportation and was not required to do so.

As noted above, the particular job that

"* * * that Antonio Rodriguez at the time he received the injuries which resulted in his death in the hotel and in the fire was not in the course of his employment with the General Supply Co. within the meaning of the Texas Workmen's Compensation Act. The court further concludes that the plaintiffs should take nothing by reason of their suit against the defendant."

From the judgment entered in accordance with this conclusion, plaintiffs have appealed. Here, in support of their position that, though if the injury had occurred in San Antonio, where Rodriguez lived, he would not have been covered while away from his work and

asleep, he was covered at Del Rio because his case comes within the away from home exception to the general rule, appellant cites cases of salesmen, collectors, and others employed on a 24 hour basis, whose employment carried them away from their home and kept them on general call, such as Texas Employers' Ins. Ass'n v. Harbuck, Tex.Civ.App., 73 S.W. 2d 113 and Texas Employers' Ins. Ass'n. v. Cobb, Tex.Civ.App., 118 S.W.2d 375, and presses upon us the argument that Rodriguez's case fits the pattern with which they deal.

Appellee, on its part, citing Associated Employers' Reciprocal v. Simmons, Tex. Civ.App., 273 S.W. 686; Wynn v. Southern Surety Co., Tex.Civ.App., 26 S.W.2d

---

he was doing contemplated that he would stay at Del Rio at some place or lodging or hotel temporarily while he was there and he could not reasonably have performed the job unless he did so, as it would not be practical for him to go back and forth from San Antonio each day.

Jan. 7, 1955, was a Friday of the second week of the work being performed; Rodriguez and Gunnells went to Del Rio on Monday morning of the first week and returned to San Antonio on Friday night, after they had completed their work. They returned Monday to Del Rio, intending to return on Friday of the second week; their pay was not paid them in Del Rio but was paid in San Antonio each Saturday at the office of their employer.

*They worked 8 hours each day during the regular working hours and Rodriguez was paid at the rate of 2.625 per hour. In contemplation of this employment and as a part thereof, the company paid each of them the sum of $22.50 per week in cash to take care of board and lodging while they were away from San Antonio and this was fixed at the rate of $5.00 per day for 4½ days.* $2.00 of said amount was being paid by Rodriguez per day for the room in which he met his death;

Rodriguez and Gunnells each made his own arrangements for the room each occupied. During the first week they had stayed at different places. They did not stay at the hotel Friday nights and they did not intend staying there Friday night, Jan. 7, 1955, but intended to return to

San Antonio where they would receive their pay the next day. When they chose to do so, the two men ate their meals together but they were not required to do so, and on Jan. 6, the evening before the fire, they did not do so.

Gunnells saw Rodriguez about 7 o'clock Thursday evening, but had no occasion to see him thereafter until he woke Gunnells up a little after midight and told him that the hotel was on fire. There is no evidence to show where Rodriguez spent the time between the last time Gunnells saw him and the time he woke Gunnells up.

There is no evidence that the General Supply Co. or Gunnells had anything to do with making arrangements for Rodriguez to stay at the St. Charles Hotel, none that he was instructed by them to stay at that hotel. *He was only on the job as a carpenter and he worked the regular hours. At the time of the fire in which he met his death he was not performing any carpenter work and was off the job where he performed his actual physical labors. He was, however, in the City of Del Rio in contemplation of his employment, staying there so that he would be there the next morning on the job. Rodriguez made his own arrangements as stated above, finding and renting the room from the hotel and the room was paid for him out of the money supplied by his employer. His employer did not compel him to stay at any particular hotel or place of lodging or to eat at any particular place while in the city.* (emphasis supplied)

691[2] (writ of error refused); Smith v. Texas Employers' Insurance Ass'n., 129 Tex. 573, 105 Texas Employers' Ins. Ass'n v. Sparrow, 134 Tex. 352, 133 S.W. 2d 126. Insisting that the facts in this case are entirely different from the facts in the cases cited by appellant, it points to the difference inherent in what was required by the work here and what was required to be done and was done in the Harbuck and Cobb cases. So pointing, appellee, calling attention to the fact that in each of those cases the employer was held by the court to be generally employed on a twenty-four hour basis, without fixed time, place, or pay per hour for doing the work, thus states its case:

"On the other hand, Rodriguez had duties to perform only for eight hours a day during a specified work day. These duties were performable at a specific place, to-wit, building of a high school building in Del Rio, Texas. He was employed only occasionally by this company, and frequently worked for other contractors. He had no property of his employer in his care or possession. The tools which he used were undoubtedly his own, and these he left on the job between periods. When his work day was over, Rodriguez could go anywhere he wanted to go, and do anything which he wanted to do until sixteen hours later when he was supposed to report back for work on the job. His only limita-

tions were geographical in nature. During his off hours he was not required to keep his employer informed as to his whereabouts. He was not subject to any direction. He was not required to make himself available for recall to duty. He was completely on his own."

From the above contrary contentions of the parties, it is apparent that the correct decision of the question presented here requires a preliminary statement of the applicable law and we think we cannot do it better than by quoting from the very well considered opinion of this court in New York Casualty Co. v. Wetherell, 5 Cir., 193 F.2d 881, 882, an opinion in which, though there was a dissent, it was based upon a disagreement not with the statement of the controlling legal principles but with their application to the particular facts of that case.

"Pertinent in arriving at a solution of the question here presented is that portion of the Workmen's Compensation statute found in Article 8309, Sec. 1, Vernon's Ann. Civ.St., which provides that the term 'injury sustained in the course of employment' as used in the law 'shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business

---

2. In this case a traveling salesman left the hotel and went to a restaurant where he was eating his evening meal. While walking across the street returning to the hotel he was struck by an automobile and killed. The court held that his death was not received in the course of his employment. The pertinent part of this opinion reads as follows:

"The courts have uniformly held that the burden of proof is upon the claimant under the Workmen's Compensation Law to establish that the injury was received in the course of employment and while in the discharge of the employer's business. [Citing cases.] As we view the testimony in this case in its most favorable light, there is not any circum-

stance or fact that tends to show that Mr. Wynn at the time he was injured was engaged in his employer's business, or that the injury was received in the course of his employment. A traveling salesman, while eating his meals or sleeping at hotels, or attending church or theaters or going on picnics or private errands for his own pleasure or profit, is not, within the contemplation of the Workmen's Compensation Act, engaged in his employer's business, and an injury received by him while performing said acts or engaged in said recreations is not, within the purview of said law, an injury received 'in the course of his employment'." 26 S.W.2d at page 693.

of his employer whether upon the employer's premises or elsewhere.' The Texas courts in construing this statute, following the rule announced by the Supreme Court of Massachusetts in the case of In re McNicol, 215 Mass. 497, 102 N.E. 697, L.R.A. 1916A, 306, have consistently held that 'in order that an employee may recover under the provisions of this law, proof that his injury occurred, while he was engaged in or about the furtherance of the employer's affairs or business is not alone sufficient. He must also show that his injury was of such kind and character as had to do with and originated in the employer's work, trade, business, or profession.' Texas Indemnity Ins. Co. v. Clark, 125 Tex. 96, 81 S.W.2d 67, 69, and authorities there cited.

"It is the general rule, established by the great weight of authority, that where an injury occurs at a time not within a contractual exception, employees may not recover compensation for injuries received while going to and from the place where they are to perform labor for the employer. The following are but some of the many cases in which compensation has been denied to employees who were injured out of work hours in going to and from work. American Indemnity Co. v. Dinkins, Tex.Civ.App., 211 S.W. 949; London Guaranty & Accident Co. v. Smith, Tex.Civ.App., 290 S.W. 774; Aetna Life Ins. Co. v. Palmer, Tex.Civ.App., 286 S.W. 283; Central Surety & Ins. Corp. v. Howard, 5 Cir., 47 F.2d 1049; Maryland Casualty Co. v. Kramer, 5 Cir., 62 F.2d 295. But injuries received while going to and returning from work may often be compensable as where, by the terms of the contract of employment, the employee is required to perform services for the employer upon the streets; or where injury occurs at a place furnished by the employer in the interest of his business as the necessary and immediate means of access to where the employee is required to labor, or in such close proximity and relation to the employer's premises as to be in practical effect a part of the employer's premises; or where the contract provides for transportation or that the employee should be paid for the time taken in going to and returning from his place of employment; or in cases of salesmen, messengers, deliverymen and the like, who are required and obliged to be continuously on the street in the course of their employment, or to those who are sent on missions for the employer to places other than where they ordinarily work. Where the line is to be drawn in each case is to be determined by the facts themselves. The Texas cases construing and applying the Workmen's Compensation Law have laid down no exact formula which will solve every case involving, the question whether or not a given accident is so intimately related to the employment as to come within the term 'injury sustained in the course of employment' as defined by the applicable statute. American Mutual Liability Ins. Co. v. Parker, 144 Tex. 453, 191 S.W.2d 844; Voehl v. Indemnity Ins. Co., 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 250."

In the light of the above, we are of the opinion that appellee and the district judge were right, the appellants wrong. As the Wetherell case correctly states, while Texas cases have laid down no exact formula which will by rule of thumb resolve every case, there has been laid down, there is, a consistent pattern for decision, which, whatever inconsistencies in application particular cases may appear to present, has never varied in its statement of the controlling principles.

Because this is so, it may be confidently affirmed that if, in assaying the teachings of a particular case, attention is focused not on the result in it of the application of the principles, but on the principles

themselves as they are stated in the case to be, it will be seen that the approach to the decision in each case has been professedly the same and that it has not been intended by the court in deciding this, that, or the other case, to vary or depart from the established standards, but only to apply as consistently as possible to the varying sets of facts the standards which never vary.

Thus the case of Southern Surety Co. v. Shook, Tex.Civ.App., 44 S.W.2d 425, which has sometimes been considered to be a departure from the law, *when read in the light of the principles expounded both in the main opinion and in that on rehearing as controlling its decision under the facts as found by it, will show that it is precisely based upon adherence to the established pattern for decision and the recognition that it must be adhered to*. Likewise, whether one feels that the application of the principles to the facts in the Cobb and Harbuck cases, dealing with traveling salesmen and collectors having no fixed hours or place of work, was correct, no one can doubt, *in the light of the principles the cases lay down and purportedly apply, that these cases make a point not of departing from but of following the established pattern*.

The same careful study of compensation cases in general will show that in case after case the courts have made it clear that the intention to maintain a constant pattern has never changed or wavered. This pattern is that a workman employed at regular hours and places, when going to and from his work or when asleep or otherwise off duty, is not engaged in the course of his employment and that if injured at other times and places than in his working hours and at his work, the injury does not originate in the employment. Specific cases are Central Surety & Ins. Corp. v. Howard, 5 Cir., 47 F.2d 1049; Holditch v. Standard, 5 Cir., 208 F.2d 721; Yorkshire Indemnity v. Gonzales, 5 Cir., 210 F.2d 545, 549; Smith v. Texas Employers' Ins. Ass'n., supra.

When then, in the light of this pattern, we consider the undisputed facts in this case: that plaintiff's decedent worked as a carpenter on the job at a fixed place of work, at fixed hours and a fixed hourly rate of pay; that he came to his death not in his working hours or at his work place but away from it, out of hours and when sleeping; we are bound to conclude that his injury was not compensable. No case, holding, as here contended for, *that merely because a workman has taken a job away from his home, though it is a job with regular hours at a regular rate of pay per hour and at a regular place of work, the principles governing the kind of job he holds do not apply, and if injured away from his place of work off duty and out of hours, he is entitled to compensation, has been cited to us, nor have we found any*. To so hold in this case, in the face of these settled principles, would be, we think, to seriously and unwarrantedly breach the settled pattern of the law. CF. Texas Indemnity Insurance Co. v. Clark, 125 Tex. 96, 81 S.W.2d 67.

The judgment was right. It is affirmed.