Oran W. BROWN and Steven R. Webster

v.

PALMER CONSTRUCTION COMPANY, INC. and American Employers' Ins. Co.

Supreme Judicial Court of Maine.

Aug. 14, 1972.

Platz & Day by Thomas E. Day, Jr., Thomas F. Kinnelly, III, Lewiston, for plaintiffs.

Mahoney, Desmond, Robinson & Mahoney by Lawrence P. Mahoney, Robert F. Hanson, Portland, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

These companion cases, petitions for award of workmen's compensation benefits, were by agreement heard, decided and appealed together upon a single record. The Industrial Accident Commission awarded compensation to both petitioners.

The facts are not in dispute, the evidence having consisted of the uncontradicted testimony of Petitioner Brown.[1] Both claimants reside in the Lewiston-Auburn area and where employed by Palmer Construction Company, Inc. At the request of their employer, they went to Brattleboro, Vermont to work as linemen on a job undertaken in that area. Brattleboro is beyond reasonable commuting distance from the claimants' residence in Maine and they were expected by their employer to find lodging facilities of their own choice near the Vermont job location. To this end the employer provided additional compensation to cover living expenses away from home. The petitioners procured an apartment with kitchen facilities in which they could prepare their own meals. The petitioners worked regular hours on the job and were not "on call" during off hours. On October 17, 1968 while starting to prepare a meal, both petitioners were injured when the oven of their gas stove suddenly exploded. After carefully reviewing the authorities relating to coverage for so-called "traveling employees," the Commission concluded that "there is no rational basis for distinguishing between a so-called 'traveling employee' and the employees in this case, the only distinction being that in the 'traveling employee' case he would be

on the road the next day, whereas in this case he would return to a set place of employment." We agree and affirm the awards.

■ We have had no prior occasion to consider the "traveling employee" rule. Cases in other jurisdictions have for the most part dealt with traveling salesmen and long haul truck drivers. Larson's Workmen's Compensation Law, Vol. 1, p. 443, Sec. 25.00 states:

> "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable."

An examination of the authorities, many of which are assembled in Larson's treatise, clearly reveals that they are in irreconcilable conflict. Moreover, a single factual variation may control the result and decision in this area must be on a case-by-case basis. The problem is of course whether or not the injury occurring away from the actual work site in circumstances such as are presented in the instant case can be said to have occurred in the course of and arisen out of the employment as required by 39 M.R.S.A., Sec. 51. "Arising out of" refers to the origin of the accident while "in the course of" refers to time, place and circumstances. Paulauskis' Case, (1927) 126 Me. 32, 34, 135 A. 824. If the accident is the product of a risk created by or incidental to the employment and if the worker on a job far from home may be treated as continuously employed for compensation purposes, both elements are satisfied.

■ We approach this problem mindful of the legislative mandate that the Act be

---

1. By stipulation the Brown testimony was to be used as evidence in the case of Petitioner Webster.

given a liberal construction "with a view to carrying out its general purpose." 39 M.R.S.A., Sec. 92. The purpose of the Act was to eliminate litigation and transfer the burdens resulting from industrial accidents from the individual to the industry and finally to distribute it on society as a whole. Scott's Case (1918) 117 Me. 436, 104 A. 794.

In Souza's Case (1944) 316 Mass. 332, 55 N.E.2d 611, the fatally injured employee was a service man working on marine engines on a job which required that he live away from home. He received from his employer additional compensation to cover the expense of lodging of his own choice. He died as the result of a rooming house fire. The Court, affirming an award of compensation, placed emphasis on the fact that by the nature of his work the employee was "on call" in case of necessity 24 hours a day. The Court made some significant observations which we quote as follows:

> "The question is whether his employment brought him in contact with the risk that in fact caused his death.

> \*    \*    \*    \*    \*    \*

> "But it seems to us that the connection between the employment and the risk is substantially the same whether the employer or the employee selects the particular place, as long as lodging away from the employee's home or regular place of abode is provided by the employer as an incident of the work, and is required by the terms of the employment, and as long as the employee selects a place that fulfills the requirements of the employment and that is otherwise proper in the sense that it involves no unnecessary risk."

What might be viewed as an even more liberal view of the "traveling employee" rule is found in Wiseman v. Industrial Acc. Comm. (1956) 46 Cal.2d 570, 297 P.2d 649. There a bank officer on business for his employer in New York was occupying his hotel room with a woman not his wife. There was an indication of excessive drinking and death was apparently attributable to careless smoking by one of the two occupants. Nevertheless, the California Court awarded compensation. Traynor, J., writing for a divided court, was of the opinion that immoral and unlawful acts would not change the right of the traveling employee to coverage while in his hotel room. Two Justices dissenting were of the view that the injury resulted, not from a risk of employment, but from purely personal activity not reasonably contemplated as within the terms and conditions of employment—and which they likened to a "frolic of his own."

The appellants rely heavily upon the decision in Rodriguez v. Great American Indemnity Co. (1957) 5 Cir., 244 F.2d 484. In that case the deceased employee, a carpenter, had been required to work on a job 100 miles from his home. The employer furnished him with $5.00 per day for board and lodging. He was free to select his own lodging place and died as a result of a fire in his hotel room. He worked a regular 8 hour day on the employer's job. The Federal Court was required to apply Texas law and concluded that compensation must be denied. The Court placed primary reliance on Texas Indem. Ins. Co. v. Clark (1935) 125 Tex. 96, 81 S.W.2d 67. In *Clark* the injury occurred while the employee was driving about looking for a place to live. This activity was not deemed "to do with" or "originate in" the employer's work. Since Texas recognizes and applies the "traveling employee" rule, it seems possible that the Court may have been influenced by the fact that at the time the accident occurred, all the other employees were at work at the employer's temporary job site. The Rodriguez Court elected not to treat as expressive of controlling Texas law the decisions in Texas Employers' Ins. Ass'n. v. Cobb, (1938—Tex.Civ.App.) 118 S.W.2d 375, 379, and

Texas Employers' Ins. Ass'n. v. Harbuck (1934—Tex.Civ.App.) 73 S.W.2d 113. Cobb and Harbuck were distinguished in Rodriguez as involving employees "on call" 24 hours a day. An analysis of these cases reveals, however, that the "on call" requirement was more fiction than fact. In Harbuck a traveling salesman on expense account was killed by fire in a hotel of his own choice. He was provided with an expense account. In awarding compensation the Court reasoned that he was not "stepping aside" from his employer's business for his own individual pleasure or comfort—that sleep in the hotel was a necessity in the performance of his work. In Cobb a collector of company accounts, on expense account, was the victim of asphyxiation in a tourist cabin which he had selected for a night's lodging. He died as a result of carbon monoxide poisoning produced by the operation of a heater. In allowing compensation, the Court said, "If the risk is incidentally attendant upon work or business in furtherance of the employer's business * * * the employee is protected." In our view the "on call" fiction is but a slender reed upon which to hang the distinction between Rodriguez on one hand and Harbuck and Cobb on the other. We seriously question whether the collector in Cobb was in actuality more "continuously" engaged in his employment while away from home on his employer's business than was the carpenter in Rodriguez. Each was sleeping in the room where he met his death, not as a matter of personal preference, but in furtherance of the requirements of his employer's business, which indeed brought him to that room far from home.

It is interesting to compare Knox v. Batson (1966) 217 Tenn. 620, 399 S.W.2d 765, 772. There a dry wall finisher was staying in a motel of his own choice. He was killed by gas emitted by a heater. The motel and job site were about 75 miles from the employee's home. Some employees commuted daily over this distance. The employer gave an expense allowance which was the same whether the employee commuted or took lodging near the job. The Court distinguished its prior traveling employee cases, in which compensation had been awarded, on the ground that "the taking of lodging in hotels, in both cases, was clearly contemplated as an essential ingredient of the performance of the employment by the employee." Here some employees elected of their own volition to engage lodging nearer the fixed construction job site than their homes rather than to commute. Thus lodging away from home was not a direct incident to the employment. Under these circumstances the Knox Court concluded that lodging related not to the employment but to the comfort and the convenience of the employee. On this reasoning, query whether the result would have been the same if the job location had been 300 or 400 miles away and daily commuting obviously impossible.

We think the policy of the Maine Act is to protect the employee against risks which are not purely self-created but are created by and incidental to the employment. In the instant case the necessity of lodging and meals in Brattleboro was not merely the necessity of the injured employees—it was a necessity of the employer in furtherance of the work it had contracted to perform in Vermont. These employees slept and ate where they did, not of their own choice or preference, not as a matter of personal comfort or convenience, but to accommodate the necessities of their employment. What they did was within the contemplation of the terms and conditions of that employment. The choice of an apartment with ordinary kitchen facilities, a choice the employees were free to make, did not add such unreasonable or excessive risks and perils as might cast doubt on the right to coverage. We conclude as did the Commissioner below that there is no rational difference between a traveling employee who moves from place to place and one who travels many miles to his em-

ployer's job location and can return home only on weekends or when the work is finally completed. In the words of Larson (Vol. 1, p. 445, Sec. 25.21), "traveling employees, *whether or not on call*, usually do receive protection when the injury has its origin in a risk created by the necessity of sleeping and eating away from home." (Emphasis ours) In our view this is a sound rule which accords with the liberal construction to be given our Workmen's Compensation Act, and we apply it on these facts.

Appeals denied. Ordered that one allowance of $350 to cover fees and expenses of counsel, plus cost of record, be paid by the appellants to the appellees.

POMEROY, J., did not sit.

All Justices concurring.